**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RHONDA NITTO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED<br><br>Case No.: |

Plaintiff, Rhonda Nitto, on behalf of herself and all others similarly situated, brings this class action against Defendant, CVS Pharmacy, Inc. ("Defendant" or "CVS"), and alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## GENERAL ALLEGATIONS

1. CVS offers a variety of non-prescription drugs, including oral nasal decongestants, competing in a billion-dollar industry. Four such products are the over the counter oral nasal decongestants CVS Health "Daytime Softgels Sever Cold/Flu Relief," "Non-Drowsy Nasal Decongestant PE," "Mucus Relief Sinus Severe Congestion & Pain," "Severe Allergy & Sinus Headache," and "Daytime and Nighttime Sinus Relief," products (collectively, "Products" or "CVS PE Products"). These Products all contain phenylephrine hydrochloride ("PE") nasal decongestant and most contain acetaminophen pain relief as active ingredients. The Products are marketed as "MAXIMUM STRENGTH" for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," and/or "Fever Reducer."

2. The active decongestant ingredient in the Products is phenylephrine hydrochloride,

which the weight of the reliable scientific evidence, as recently unanimously confirmed by a Food and Drug Administration ("FDA") committee, has determined to be no more effective as a nasal decongestant than a placebo.

3. When consumers purchase decongestants and pain relief pills, the strength of the ingredients are important purchasing considerations, especially for consumers seeking a "MAXIMUM STRENGTH" product.

4. CVS takes advantage of this consumer preference for strong relief by prominently representing the alleged strength of the CVS PE Products in the one place every consumer looks when purchasing a product—the front packaging.

5. On each product package for Non-Drowsy Nasal Decongestant PE, CVS touts in capitalized, yellow font on the top of the front of the package that it includes a nasal decongestant, providing "MAXIMUM STRENGTH" relief for "Sinus pressure" and "Nasal congestion":



6. The CVS Health "Daytime Softgels Sever Cold/Flu Relief," "Mucus Relief Sinus Severe Congestion & Pain," "Severe Allergy & Sinus Headache," and "Sinus Relief," Products have similar labels, with similar claims, using capitalized font (either yellow, red, or blue) and also misleadingly tout "MAXIMUM STRENGTH" as to their other active ingredient, acetaminophen, as a pain reliever, claiming they offer MAXIMUM STRENGTH" relief for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," and/or "Sinus Headache", and are a "Pain Reliever" and/or "Fever Reducer":




CVSHealth
Compare to the active ingredients in Mucinex® Sinus-Max® Severe Congestion & Pain*
NDC 69842-786-02
MAXIMUM STRENGTH
Mucus Relief Sinus Severe Congestion & Pain
ACETAMINOPHEN - Pain reliever
GUAIFENESIN - Expectorant
PHENYLEPHRINE HCl - Nasal decongestant
Relieves:
• Sinus congestion
• Headache
Thins & loosens mucus
20 CAPLETS
Ages 12 Years & Over
Actual Size


CVSHealth
Caplets
NDC 59779-543-09
MAXIMUM STRENGTH
Severe Allergy & Sinus Headache
ACETAMINOPHEN, DIPHENHYDRAMINE HCl
PHENYLEPHRINE HCl
Pain reliever, Antihistamine
Nasal decongestant
For Allergy Plus Sinus Pain & Pressure Relief of:
Sneezing, Runny nose, Sinus headache, Sinus congestion, Sinus pain & pressure, Itchy, watery eyes
20 CAPLETS
Capsule-Shaped Tablets
Actual Size




7. By portraying these CVS PE Products as "MAXIMUM STRENGTH" decongestants and pain relievers, CVS misleads consumers into believing their ingredients are suited to providing the strongest decongestant relief allowable over the counter.

8. Despite marketing these Products as "MAXIMUM STRENGTH," CVS knew the active nasal decongestant ingredient in them, phenylephrine hydrochloride, was not as strong as other decongestants available without a prescription. Indeed, studies have shown phenylephrine hydrochloride is no more effective than a placebo. Additionally, some of the CVS PE Products do not even contain the maximum dosage of acetaminophen allowable over the counter and are thus not deserving of the "MAXIMUM STRENGTH" label and representation.

9. Thus, the "MAXIMUM STRENGTH" packaging is misleading because stronger nasal decongestants—without the "MAXIMUM STRENGTH" claim—are available. For example, both oxymetazoline and pseudoephedrine are available without a prescription, and the former may be purchased over the counter.

10. Further, CVS knew that higher doses of acetaminophen exist on the market. The Court need look no further than its manufacturing and marketing of CVS Health Acetaminophen as “Regular Strength” for 325 mg and “Extra Strength” for 500 mg caplets, tablets, softgels, and gelcaps taken, as with the CVS PE Products, in dosages of two each.

11. Despite this knowledge, CVS chose to mislead consumers through its promotion of the Products, with and without acetaminophen, as “MAXIMUM STRENGTH.” However, none of the CVS PE Products are “MAXIMUM STRENGTH.” Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether the Products are “MAXIMUM STRENGTH” decongestants and/or pain relievers, or to ascertain the true quality or strength of these Product. For that reason, reasonable consumers must and do rely on manufacturers, like CVS, to be honest and transparent and to properly disclose on the packaging all material information regarding the Products and their dose.

12. Rather than being honest and transparent, CVS makes this “MAXIMUM STRENGTH” representation in a knowingly false, misleading, and deceptive manner.

13. For all the reasons set forth herein, including but not limited to CVS’s misrepresentations and omissions regarding its “MAXIMUM STRENGTH” claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of CVS’s PE Products, for: (1) violation of state consumer protection laws and (2) unjust enrichment.

## THE PARTIES

14. Plaintiff is a citizen of Illinois, residing in the Village of Grayslake, within Lake County. She purchased CVS Health “Non-Drowsy Nasal Decongestant PE,”” several times within the applicable statute of limitations period, most recently within the last six months in 2023.

15. CVS is a Rhode Island corporation, with its principal place of business and

headquarters located at One CVS Drive, Woonsocket, RI 02895. As such, Defendant is a resident and citizen of Rhode Island. CVS markets, distributes, and sells the Products to consumers throughout the United States through its brick-and-mortar locations and online through Defendant's website.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over CVS in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. CVS has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in, and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed, and/or sold the Products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time CVS was engaged in business activities in the state of Illinois.

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and CVS are citizens of different states.

18. Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because CVS conducts substantial business in this District, has sufficient

minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the CVS PE Products in this District. Furthermore, Plaintiff resides in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

20. CVS is one of the largest pharmacy companies in the world. As such, CVS sells several OTC drugs, including its own "CVS Health" branded line of products.

21. Phenylephrine hydrochloride is the active ingredient in CVS PE Products for nasal decongestion. Acetaminophen is the active ingredient in some CVS PE Products that are the subject of this action as a pain reliever. Both form the basis for CVS's "MAXIMUM STRENGTH" misrepresentations on the Products' packaging, and overall advertising and marketing campaign.

22. At all relevant times, CVS has marketed the Products in a consistent and uniform manner nationwide.

23. As alleged above, the CVS PE Products represent that they are "MAXIMUM STRENGTH" relief for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," and/or "Sinus Headache." with representations that predominately appear on the front label of the Products in capitalized, bold, colored lettering that contrasts with the background of the packaging. This instantly catches the eye of all reasonable consumers, including Plaintiff and class members.

24. A reasonable consumer would understand that "MAXIMUM STRENGTH" relief for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," and/or "Fever Reducer," means the Products contained the strongest

dose of nasal decongestant available on the over-the-counter market, as well as the strongest dose of acetaminophen for pain relief.

25. All reasonable consumers, including Plaintiff, read and relied on CVS's "MAXIMUM STRENGTH" representations when purchasing the Products. Indeed, when purchasing pharmaceuticals, especially those promising to be "MAXIMUM STRENGTH," consumers often look for a product with the strongest active ingredients possible and are willing to pay a premium for them.

26. CVS's "MAXIMUM STRENGTH" representation was material to Plaintiff's and class members' decision to purchase the CVS PE Products. Had consumers, such as Plaintiff, known the CVS PE Products were not "MAXIMUM STRENGTH" relief for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," and/or "Fever Reducer," they would not have purchased them or would have paid less. Indeed, the only reason consumers purchase pharmaceuticals is for their advertised therapeutic effect. They want relief from their cold symptoms, and in this case, the Plaintiff and the class members purchased "MAXIMUM STRENGTH" Products based on CVS's false representations and omissions.

27. CVS's marketing efforts are made in order to—and do in fact—induce consumers to purchase the CVS PE Products at a premium because consumers believe they are getting "MAXIMUM STRENGTH" decongestants. This deceives consumers because they are not informed that phenylephrine hydrochloride nasal decongestants are inferior to other, available decongestants.

28. CVS, however, has at all relevant times been well aware that its CVS PE Products are not "MAXIMUM STRENGTH" nasal decongestants, and that other, stronger decongestants

are available.

29. Starting in December 2007, the FDA convened a Nonprescription Drugs Advisory Committee ("NDAC") meeting to address questions about phenylephrine's purported effectiveness. On September 11 and 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride (referred to by the FDA as "PE") as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."

30. In 2015, in a well-publicized fashion, further independent research was submitted to the FDA requesting the PE be reclassified as not effective as a nasal decongestant.

31. As a leading manufacturer of phenylephrine hydrochloride oral nasal decongestants, CVS knew or should have known of the same scientific literature reviewed by the FDA. Nonetheless, it represents that the Products are "MAXIMUM STRENGTH." This is particularly misleading because CVS offers other nasal decongestants, which contain effective active ingredients, such as pseudoephedrine, which are not marketed as "MAXIMUM STRENGTH" relief for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," and/or "Fever Reducer." Accordingly, consumers are induced into purchasing the CVS PE Products, based on the "MAXIMUM STRENGTH" representation, when comparing it to other competing nasal decongestants.

32. Nonetheless, because the Products contain phenylephrine as the only active oral nasal decongestant ingredient, for that reason alone they are not "MAXIMUM STRENGTH" relief

for "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," and "Sinus pain & pressure." Phenylephrine is not the "MAXIMUM STRENGTH" nasal decongestant allowable over-the-counter. Even CVS offers decongestants with higher strength active decongestant ingredients.

33. Further, for "Daytime Softgels Sever Cold/Flu Relief," "Mucus Relief Sinus Severe Congestion & Pain," "Severe Allergy & Sinus Headache," and "Sinus Relief," the "MAXIMUM STRENGTH" representation is misleading for yet another reason: the only active ingredient for pain relief is 325 mg of acetaminophen, which is the equivalent of a "Regular Strength" acetaminophen tablet. Thus, the strength of the acetaminophen dosage is far below anything that can be considered "MAXIMUM STRENGTH," or as CVS calls it, "Extra Strength."




Thus, the "MAXIMUM STRENGTH" representation is misleading, both as to the claims of providing the maximum decongestant and pain relief available over the counter.

34. CVS intended for Plaintiff and class members to be deceived or mislead by its misrepresentations and omissions. Indeed, label space is limited, so manufacturers only place the most pertinent information on the front label. CVS specifically labeled and marketed the CVS PE Products as "MAXIMUM STRENGTH" relief for Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," and/or "Fever Reducer"

when other oral nasal decongestants and pain relievers were not marketed in a similar fashion.

35. CVS's deceptive and misleading practices proximately caused harm to Plaintiff and the Classes.

36. Plaintiff and class members would not have purchased the CVS PE Products, or would have paid less for them, had they known the truth about the mislabeled and falsely advertised products. Indeed, other, stronger nasal decongestants and higher acetaminophen doses are available.

## PLAINTIFF'S FACTUAL ALLEGATIONS

37. Plaintiff relied on the CVS Health "MAXIMUM STRENGTH" label in deciding to purchase what she believed to be the strongest nasal decongestant. Had Plaintiff known that phenylephrine—the only active oral nasal decongestant ingredient Non-Drowsy Nasal Decongestant PE —is not the "MAXIMUM STRENGTH" nasal decongestant allowable over the counter, she would not have purchased it. Further, had she known the acetaminophen in the PE Product was not the maximum dosage available, she would not have purchased it.

38. Plaintiff resides in Grayslake, IL and is a citizen of Illinois. Throughout the relevant period, Plaintiff purchased the Products at issue in this lawsuit and was exposed to, and reasonably relied upon, CVS's "MAXIMUM STRENGTH" representations. Specifically, Plaintiff purchased CVS Non-Drowsy Nasal Decongestant PE from a local CVS located at 34344 N US Highway 45, Third Lake, Illinois, 60030 within the last six months on more than one occasion. At the time of each purchase, Plaintiff reviewed the Product packaging, including the front-label representations, and reasonably believed from these representations that the Products were "MAXIMUM STRENGTH." In reasonable reliance on these representations, Plaintiff paid an increased cost for the Products, which were worth less than represented because the statements were not true and

were highly misleading. The "MAXIMUM STRENGTH" representation on the Products' packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the "MAXIMUM STRENGTH" representations were untrue and/or misleading. Plaintiff paid a price premium for empty promises that CVS did not keep. Had Plaintiff been aware that the "MAXIMUM STRENGTH" representations made by CVS on the Products was untrue, she would have paid less for the Products, or would not have purchased them at all.

## FED. R. CIV. P. 9(B) ALLEGATIONS

39. CVS made material misrepresentations and/or omissions of fact in its labeling and marketing of the CVS PE Products by representing that they are "MAXIMUM STRENGTH" decongestant and pain reliever products.

39. CVS's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the CVS PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products. CVS omitted from Plaintiff and class members that the CVS PE Products are not "MAXIMUM STRENGTH" oral nasal decongestant products because other decongestant products exist in the market that are stronger as decongestants. CVS knew, or should have known, this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, CVS has and continues to represent that the CVS PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products when they are not, and has omitted from the CVS PE Products' packaging the fact that there are other non-prescription products that are stronger decongestants. All of that is also true as to its misrepresentation that CVS PE Products with acetaminophen are "MAXIMUM STRENGTH" pain relievers, even though their

acetaminophen content—by CVS's own classification—is only regular strength.

40. CVS made material misrepresentations and/or omissions detailed herein, including that the CVS PE Products are "MAXIMUM STRENGTH" oral nasal decongestant and pain reliever products, continuously throughout the applicable class period(s).

41. CVS's material misrepresentations and omissions, that the CVS PE Products are "MAXIMUM STRENGTH" oral nasal decongestant and pain reliever products, were located on the front label of the CVS PE Products in capitalized, bold yellow, red, or blue lettering that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and class members, at the point of sale in every transaction. The CVS PE Products are sold in CVS's brick and mortar stores and online stores in Illinois and nationwide.

42. CVS made written misrepresentations of fact on the front label of the CVS PE Products, that the CVS PE Products were "MAXIMUM STRENGTH" oral nasal decongestant products, even though other stronger decongestant products are allowable over the counter. As such, CVS's "MAXIMUM STRENGTH" representations are false and misleading. Moreover, CVS omitted from the CVS PE Products' labeling the fact that there are other non-prescription products available that are stronger decongestants and pain relievers. And as alleged in detail throughout this Complaint, Plaintiff and class members read and relied on CVS's "MAXIMUM STRENGTH" representations and omissions before purchasing the CVS PE Products.

43. CVS misrepresented its CVS PE Products as being "MAXIMUM STRENGTH" decongestant products and omitted from the CVS PE Products' labeling the fact that there are other, non-prescription products available in the market that are stronger decongestants and pain relievers, for the express purpose of inducing Plaintiff and class members to purchase the inferior

phenylephrine hydrochloride and acetaminophen products at a price premium. As such, CVS profited by selling the misrepresented products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself and the following "Classes" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **National Class**: All persons in the United States who purchased the CVS PE Products in the United States for personal use and not for resale during the applicable statute of limitations period.
>
> **Multi-State Consumer Protection Class:** All persons who purchased the CVS PE Products in the State of Illinois or any state with similar laws[1] for personal use and not for resale during the applicable statute of limitations period.
>
> **Illinois Subclass**: All persons in the State of Illinois who purchased the CVS PE Products in the State of Illinois for personal use and not for resale during the applicable statute of limitations period.

45. Excluded from the Classes are (a) any person who purchased the CVS PE Products for resale and not for personal or household use, (b) any person who signed a release of any CVS in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any CVS or any entity in which a CVS has a controlling interest, (d) any legal counsel or employee of legal counsel for CVS, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

---

[1] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 ICLS §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.); Washington (Wash. Rev. Code §§ 19.86.010, et seq.). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

46. Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

47. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class members are so numerous and geographically dispersed that joinder of all class members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative class members.

48. **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all class members and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are limited to, the following:

a. Whether CVS made the "MAXIMUM STRENGTH" representations;

b. Whether CVS promoted the CVS PE Products with false and misleading statements of fact and material omissions;

c. Whether CVS's "MAXIMUM STRENGTH" representations are deceptive, unfair, or misleading to a reasonable consumer;

d. Whether CVS's actions and/or omissions violate applicable laws;

e. Whether Plaintiff and putative members of the Classes have suffered a loss of monies or property or other value as a result of CVS's acts, omissions, or misrepresentations of material facts;

f. Whether CVS was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the CVS PE Products;

g. Whether Plaintiff and members of the putative Classes are entitled to monetary damages or statutory damages and, if so, the nature of such relief; and

h. Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

49. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent class members in that Plaintiff and the class members each purchased and used the CVS PE Products and each sustained damages arising from CVS's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by CVS's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of CVS's false and deceptive "MAXIMUM STRENGTH" representations about the CVS PE Products, as alleged herein.

50. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

51. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers,

substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for CVS. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

52. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** CVS has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

53. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by CVS's conduct;

b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d. Individual joinder of all members of the Classes is impracticable;

e. Absent a class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of CVS's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the

putative Classes can seek redress for the harm caused by CVS.

g. In the alternative, the Classes may be certified for the following reasons:

(1) The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for CVS;

(2) Adjudications of claims of the individual members of the Classes against CVS would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative class members to protect their interests; and

(3) CVS has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (By Plaintiff on Behalf of the Illinois Subclass)

54. Plaintiff realleges paragraphs 1-53 above as if fully set forth herein.

55. Plaintiff brings this claim on behalf of herself and the Illinois Subclass.

56. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq*., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

57. Plaintiff and the Illinois Subclass members were injured by CVS's deceptive misrepresentations, concealments, and omissions, and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on CVS's misrepresentations, concealments, and omissions when purchasing the Products, they were injured at the time of purchase.

58. CVS does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

59. The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

60. CVS engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed, and/or omitted the material information known to CVS as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass members. Plaintiff and the Illinois Subclass members were injured by CVS's unfair and deceptive acts at the time of purchasing the Products.

61. CVS's marking of the CVS PE Products violates this prohibition by deceiving consumers into believing the products are "MAXIMUM STRENGTH" decongestant or pain relievers.

62. CVS engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

63. CVS engaged in misleading and deceptive advertising that represented that the CVS PE Products were "MAXIMUM STRENGTH." CVS chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe CVS's false and misleading "MAXIMUM STRENGTH" representations and omissions.

64. CVS's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

65. CVS intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

66. CVS's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

67. Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for CVS's material misrepresentations as described in this Complaint.

## COUNT II
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (By Plaintiff on Behalf of the Illinois Subclass)

68. Plaintiff realleges paragraphs 1-53 above as if fully set forth herein.

69. Plaintiff brings this claim on behalf of herself the Illinois Subclass.

70. The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq*., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

71. 815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

72. CVS's marketing of the CVS PE Products violates this prohibition by deceiving consumers into believing they are "MAXIMUM STRENGTH" decongestant or pain relievers.

73. CVS engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

74. CVS engaged in misleading and deceptive advertising that represented that the CVS PE Products were "MAXIMUM STRENGTH." CVS chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe CVS's false and misleading "MAXIMUM STRENGTH" representations and omissions.

75. CVS intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the CVS PE Products.

76. CVS's concealment, omissions, and other deceptive conduct were likely to

deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the Products.

77. CVS's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

78. CVS's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

79. Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the CVS PE Products but for CVS's material misrepresentations as described in this Complaint.

80. CVS intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the CVS PE Products.

**COUNT III**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(By Plaintiff on Behalf of the Multi-State Consumer Protection Class)**

81. Plaintiff realleges paragraphs 1-53 above as if fully set forth herein.

82. Plaintiff brings this cause of action on behalf of herself and the Multi-State Consumer Protection Class.

83. Plaintiff and Multi-State Consumer Protection Class members have been injured as a result of CVS's violations of the state consumer protection statutes listed above in paragraph 44 and footnote 1, which also provide a basis for redress to Plaintiff and Multi-State Consumer Class members based on CVS's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct.

84. CVS's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State

Consumer Class.

85. CVS violated the Multi-State Consumer Class states' consumer protection, unfair trade practices, and deceptive acts laws through its misleading and deceptive advertising that represented that the CVS PE Products were "MAXIMUM STRENGTH." CVS chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe CVS's false and misleading "MAXIMUM STRENGTH" representations and omissions.

86. CVS's misrepresentations were material to Plaintiff and Multi-State Consumer Class members' decision to purchase the Products or pay a premium for the Products.

87. CVS made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

88. As a result of CVS's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Class members paid a premium for the Products.

89. As a result of CVS's violations, CVS has been unjustly enriched.

90. Pursuant to the alleged consumer protection, unfair trade practices, and deceptive acts laws, Plaintiff and Multi-State Consumer Class members are entitled to recover compensatory damages, restitution, punitive, and special damages, including but not limited to statutory or treble damages, reasonable attorneys' fees, and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff, In the Alternative, and on Behalf of the Nationwide and/or Illinois Subclass)**

91. Plaintiff realleges paragraphs 1-53 above as if fully set forth herein.

92. Plaintiff brings this cause of action in the alternative on behalf of herself, the Nationwide Class, and/or the Illinois Subclass against CVS. It is alleged it the alternative to the extent there is no adequate remedy at law.

93. Plaintiff and the putative class members conferred a benefit on CVS when they purchased the CVS PE Products. By its wrongful acts and omissions described herein, including selling the CVS PE Products containing the "MAXIMUM STRENGTH" representations, which did not conform to the promises or affirmations of fact made on the label, CVS was unjustly enriched at the expense of Plaintiff and the putative class members.

94. Plaintiff's detriment and CVS's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

95. CVS has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative class members under circumstances in which it would be unjust for CVS to be permitted to retain the benefit. It would be inequitable for CVS to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the CVS PE Products.

96. CVS has been unjustly enriched in retaining the revenues derived from Plaintiff's and class members' purchases of the CVS PE Products, which retention of such revenues under these circumstances is unjust and inequitable because CVS marketed, advertised, distributed, and sold the CVS PE Products, and CVS misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the CVS PE Products with "MAXIMUM STRENGTH" representations, which caused injuries to Plaintiff and the Class because they would not have purchased the CVS PE Products based on the same representations if the true facts concerning the CVS PE Products had been known.

97. Plaintiff and the putative class members have been damaged as a direct and proximate result of CVS's unjust enrichment because they would not have purchased the CVS PE Products on the same terms or for the same price had they known the true nature of the CVS PE Products and the misstatements regarding the strength of the CVS PE Products' active ingredient.

98. CVS either knew or should have known that payments rendered by Plaintiff and the putative class members were given and received with the expectation that the "MAXIMUM STRENGTH" representations made by CVS in advertising, on CVS's website, and on the PE CVS Products' labels and packaging were true. It is inequitable for CVS to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" representations are not true.

99. Plaintiff and the putative class members are entitled to recover from CVS all amounts wrongfully collected and improperly retained by CVS.

100. As a direct result of CVS's wrongful conduct and unjust enrichment, Plaintiff and the putative class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by CVS for its inequitable and unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing as Class Representatives and appointing Plaintiff's counsel as Class Counsel;

B. Directing that CVS bear the costs of any notice sent to the Classes;

C. Declaring that CVS must disgorge, for the benefit of the Classes, all or part of the ill-gotten profits they received from the sale of the CVS PE Products, or order CVS to make full restitution to Plaintiff and the members of the Classes;

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against CVS to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F. Granting an Order requiring CVS to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "MAXIMUM STRENGTH" representations regarding the CVS PE Products;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiff and members of the Classes compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I. Enjoining CVS from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K. Awarding civil penalties, prejudgment interest, and punitive damages as permitted by law; and

L. Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: September 21, 2023

Respectfully submitted,

By: */s/ Gary Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Jeff Ostrow
Jonathan M. Streisfeld
Kristen Lake Cardoso
Daniel Tropin*
Kenneth Grunfeld*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email: ostrow@kolawyers.com
streisfeld@kolawyers.com
cardoso@kolawyers.com
tropin@kolawyers.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
rgott@pwfirm.com

Erin Ruben
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

Karl Amelchenko*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: kamelchenko@milberg.com

Jimmy Mintz*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Ave., 2nd Floor
Coral Gables, FL 33134
Telephone: (786) 876-8200
Email: jmintz@milberg.com

*Attorneys for Plaintiff*

**Applications for admission forthcoming*